UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| RODNEY DAVIS, | ) |
| Plaintiff, | ) Case No. EDCV 12-2201 AJW |
| v. | ) MEMORANDUM OF DECISION |
| CAROLYN W. COLVIN,<br>Acting Commissioner of Social Security, | ) |
| Defendant. | ) |

Plaintiff filed this action seeking reversal of the decision of defendant, the Acting Commissioner of the Social Security Administration (the "Commissioner"), denying plaintiff's application for supplemental security income ("SSI") benefits. The parties have filed a Joint Stipulation ("JS") setting forth their contentions with respect to each disputed issue.

**Administrative Proceedings**

Plaintiff protectively filed an application for SSI benefits on May 11, 2009, alleging that he had been disabled since March 18, 2008 due to a back injury, respiratory problems, a learning disability, and an ankle injury. [JS 2; Administrative Record ("AR") 138-140, 145]. In a written hearing decision that constitutes the Commissioner's final decision in this matter, an administrative law judge ("ALJ") concluded that plaintiff was not disabled because he did not have a severe impairment or combination of impairments. [AR 10-19].

///

**Standard of Review**

The Commissioner's denial of benefits should be disturbed only if it is not supported by substantial evidence or is based on legal error. Stout v. Comm'r, Social Sec. Admin., 454 F.3d 1050, 1054 (9th Cir. 2006); Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002). "Substantial evidence" means "more than a mere scintilla, but less than a preponderance." Bayliss v. Barnhart, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005). "It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005) (internal quotation marks omitted). The court is required to review the record as a whole and to consider evidence detracting from the decision as well as evidence supporting the decision. Robbins v. Social Sec. Admin, 466 F.3d 880, 882 (9th Cir. 2006); Verduzco v. Apfel, 188 F.3d 1087, 1089 (9th Cir. 1999). "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." Thomas, 278 F.3d at 954 (citing Morgan v. Comm'r of Social Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999)).

**Discussion**

Plaintiff contends that the ALJ erred in finding that plaintiff's obesity was not severe, either singly or in combination with his other medically determinable impairments. [See JS 3-13].

The ALJ found that plaintiff had medically determinable impairments consisting of back and ankle problems, sleep apnea, an inguinal hernia, obesity, status post gunshot wound to the abdomen, status post hemorrhoidectomy, an affective disorder, and substance abuse. The ALJ determined that those impairments, singly or in combination, did not significantly limit plaintiff's ability to perform basic work activities, and therefore that plaintiff did not have a severe impairment or combination of impairments. [AR 12].

A medically determinable impairment or combination of impairments is not "severe" if the evidence establishes "a slight abnormality that has no more than a minimal effect on an individual's ability to work." Webb v. Barnhart, 433 F.3d 683, 686 (9th Cir. 2006) (quoting Smolen v. Chater, 80 F.3d 1273, 1289-1290 (9th Cir. 1996)). To assess severity, the ALJ must determine whether a claimant's impairment or combination of impairments significantly limits his or her physical or mental ability to do "basic work activities." 20 C.F.R. §§ 404.1521(a), 416.921(a); see Webb, 433 F.3d at 686. Basic work activities are the "abilities and aptitudes necessary to do most jobs," such as (1) physical functions like walking, standing,

sitting, lifting, pushing, pulling, reaching, carrying, and handling; (2) the capacity for seeing, hearing, speaking, understanding, carrying out, and remembering simple instructions; (3) the use of judgment; and (4) the ability to respond appropriately to supervision, co-workers, and usual work situations. 20 C.F.R. §§ 404.1521(b), 416.921(b). The ALJ is required to consider the claimant's subjective symptoms in making a severity determination if the claimant "first establishes by objective medical evidence (i.e., signs and laboratory findings) that he or she has a medically determinable physical or mental impairment(s) and that the impairment(s) could reasonably be expected to produce the alleged symptom(s)." SSR 96-3p, 1996 WL 374181, at *2.

Medical reports in the record indicate that plaintiff was about six feet tall, and that his weight ranged from 328 pounds and 373 pounds, giving him a Body Mass Index ("BMI") of between approximately 43 and 50.[1] [See JS 3-4; AR 200, 258, 271, 388, 391]. A BMI of 30 or above signifies obesity, and a BMI at or above 40 signifies "extreme" obesity, which represents the greatest risk for developing obesity-related impairments. SSR 02-01p, 2000 WL 628049, at *2 (discussing the National Institutes of Health BMI calculator and its significance). Plaintiff also has treating and examining source diagnoses of obesity and morbid obesity. [See, e.g., AR 203, 260, 265-266, 334, 415].

The Commissioner has determined that obesity is "a risk factor that increases an individual's chances of developing impairments in most body systems" and "may increase the severity of coexisting or related impairments," especially musculoskeletal, respiratory, and cardiovascular impairments. SSR 02-1p, 2000 WL 628049, at *3, *5. When evidence of obesity is found in the record, the ALJ must consider and explain whether obesity, alone or interacting with other impairments, causes any physical or mental limitations. SSR 02-1p, 2000 WL 628049, at *3, *5; see also 20 C.F.R. Part 404, Subpart P, Appendix 1, ¶¶ 1.00Q, 3.00I & 4.00I (directing adjudicators to "consider any additional and cumulative effects of obesity" because obesity is "a medically determinable impairment often associated with" musculoskeletal, respiratory or cardiovascular impairments that "can be a major cause of disability in individuals with obesity," and stating

---

[1] BMI "is a measure of body fat based on height and weight that applies to adult men and women." See National Institutes of Health, National Heart, Lung, and Blood Institute, Body Mass Index Calculator, available at http://www.nhlbi.nih.gov/guidelines/obesity/BMI/bmicalc.htm (last accessed Jan. 21, 2014).

that the combined effects of obesity with other impairments may be greater than expected without obesity). The ALJ has a duty to determine the effect of obesity on a claimant's other impairments and its effect on the claimant's ability to work and general health, even when the claimant's obesity is not independently "severe" and is not explicitly alleged to be a "disabling factor." Celaya v. Halter, 332 F.3d 1177, 1182 (9th Cir. 2003) (reversing and remanding for a "multiple impairment analysis that explicitly accounts for the direct and marginal effects of the plaintiff's obesity during the period in question and that culminates in reviewable, on-the-record findings").

The ALJ noted the diagnoses of obesity in the record and said that he had considered plaintiff's weight in determining that plaintiff did not have a severe impairment. [AR 14-16]. The ALJ wrote that the record "does not show that the claimant has attempted to lose weight; in fact, he has gained weight since he filed his application. Regardless, there is no evidence the obesity affects him more than minimally." [AR 16].

To support his conclusion that there was no evidence that plaintiff's obesity more than minimally affected his ability to work, the ALJ cited imaging studies of the lumbar spine, bilateral ankles, and left hip that revealed only "mild" or "minimal" abnormalities. [AR 14-16, 278-279, 332-333, 337, 389, 398]. The ALJ also pointed to medical reports indicating plaintiff was treated for what the ALJ described as "aches and pains." [AR 14-16, 200-202, 251-252, 255-259, 345, 394]. The ALJ noted that plaintiff sought treatment for complaints of pain and itching due to perianal fissure and hemorrhoids and underwent surgery to remedy those conditions. [AR 14-15, 263-265, 268, 314-331, 342-343, 371]. A CPAP was recommended after a sleep study confirmed the existence of sleep apnea, but there was no evidence that plaintiff used a CPAP or received ongoing treatment for a sleep disorder. [AR 14, 267, 281-292]. Plaintiff sought treatment for complaints of chest pain, urinary incontinence, and acid reflux, but the ALJ noted that physical examinations were mostly normal, and that there was no evidence that those conditions significantly limited plaintiff. [AR 14-16, 268]. The ALJ also noted that plaintiff was diagnosed with a reducible inguinal hernia and was told that the prognosis for surgery was "poor" due to his obesity, but that plaintiff did not comply with his treatment providers' advice to lose weight. [AR 15, 322-323].

Plaintiff contends that the ALJ did not properly evaluate the effect of obesity on plaintiff's orthopedic problems and his inguinal hernia, and that the ALJ improperly rejected the consultative orthopedist's opinion that plaintiff's obesity and other impairments limited his ability to work. [JS 3]. With respect to his

orthopedic problems, plaintiff argues that his back and ankle pain is "likely exacerbated by his morbid obesity." [JS 4-5]. Plaintiff cites an April 2009 lumbar spine x-ray report showing "a moderate 40% compression deformity with no significant retropulsion" at T12, which led to a treating source diagnosis of lumbar spine radiculopathy. [JS 4-5; AR 237, 240]. Plaintiff also cites examination findings of bilateral ankle swelling and edema on May 1, 2009; a July 2009 x-ray showing mild degenerative changes in both ankles; and April 2010 MRIs of both ankles showing tensynovitis, an inflammatory condition that can cause difficulty moving a joint, joint swelling, and pain. [JS 5; AR 260, 314, 333, 342-343, 396-397]. On July 19, 2009, plaintiff underwent an orthopedic consultative examination at the Commissioner's request. [AR 199-204]. Payam Moazzaz, M.D., a board-eligible orthopedic surgeon, reviewed plaintiff's April 2009 lumbar spine x-ray and CT scan and his May 2009 lumbar spine MRI. Dr. Moazzaz elicited a history, performed an orthopedic and neurological examination, and obtained left ankle x-rays. [AR 199-203].

Dr. Moazzaz diagnosed chronic T12 compression fracture, mild degenerative disc disease of the lumbar spine, left ankle mild degenerative changes, and obesity. [AR 203]. Dr. Moazzaz said that plaintiff's neurological examination was normal, that he exhibited a full range of lumbar spine motion on examination, and that his straight leg-raising test was negative. [AR 203]. Plaintiff displayed decreased range of motion in his left ankle, and the new x-rays of his left ankle showed mild degenerative changes. [AR 203]. Dr. Moazzaz said that plaintiff's outside medical records also "demonstrate minimal degenerative changes." [AR 203]. Dr. Moazzaz observed that plaintiff "is quite obese which further exacerbates his orthopaedic condition." [AR 203]. Dr. Moazzaz concluded that plaintiff's orthopedic impairments and obesity restricted him to no more than medium work, which necessarily implies that those impairments in combination were severe independent of any of plaintiff's other medically determinable impairments.

On August 3, 2009, a nonexamining state agency physician, George Lockie, M.D., also opined that plaintiff was limited to medium work. [AR 213]. Dr. Lockie had been asked to review plaintiff's file and render an opinion in June 2009, but requested that an orthopedic consultative examination be performed before he did so. [AR 214-215]. When the file was returned to him after Dr. Moazzaz examined plaintiff, Dr. Lockie agreed with Dr. Moazzaz that plaintiff's impairments restricted him to medium work. Dr. Lockie explained that he gave Dr. Moazzaz's opinion "much weight" because "the impression is substantiated by

the physical findings . . . ." [AR 213].

Since Dr. Moazzaz's opinion is uncontroverted, the ALJ was required to articulate clear and convincing reasons supported by substantial evidence in the record for rejecting it. See Lester v. Chater, 81 F.3d 821, 830-831 (9th Cir. 2005). The ALJ did not do so. Based on his own interpretation of diagnostic imaging studies and examination findings that also were considered by Dr. Moazzaz, a specialist in orthopedics, the ALJ concluded that plaintiff's orthopedic problems and obesity were not severe, contrary to the conclusion reached by Dr. Moazzaz (and Dr. Lockie as well).

The ALJ's conclusions are insufficient to justify rejecting Dr. Moazzaz's opinion. The Ninth Circuit has held that "[w]hen an examining physician relies on the same clinical findings as a treating physician, but differs only in his or her conclusions, the conclusions of the examining physician are not 'substantial evidence.'" Orn v. Astrue, 495 F.3d 625, 632 (9th Cir. 2007). By extension, the conclusions of the ALJ based on nothing more than his own subjective interpretation of findings also considered by Dr. Moazzaz are not substantial evidence supporting his rejection of the examining physician's opinion. The ALJ gave no other reason for rejecting Dr. Moazzaz's opinion, and therefore failed to articulate clear and convincing reasons for doing so.

Plaintiff also contends that the ALJ did not properly evaluate the effect of plaintiff's obesity on his inguinal hernia. The ALJ noted that plaintiff's doctors advised him that he needed to lose weight before they could perform hernia repair surgery, and the ALJ relied in part on plaintiff's failure to comply with that advice to support his finding that plaintiff's impairments were not severe. [See AR 15, 17-18].

Recognizing that treatment for obesity "is often unsuccessful," the Commissioner's policy guidelines and Ninth Circuit law limit an ALJ's ability to use a claimant's failure to lose weight as a ground for denying benefits or making an adverse credibility finding. See SSR 02-01p, 2000 WL 628049, at *2, *8 (stating that the Commissioner "will rarely use 'failure to follow prescribed treatment' for obesity to deny or cease benefits"); Orn, 495 F.3d at 636-638 (holding that the ALJ "ignored" SSR 02-01p and "misapplied" Ninth Circuit law in using the claimant's failure to lose weight as a reason for rejecting his subjective testimony and finding him not disabled). "Before failure to follow prescribed treatment for obesity can become an issue in a case," the Commissioner "must *first* find that the individual is disabled because of obesity or a

combination of obesity and another impairment(s)." SSR 02-01p, 2000 WL 628049, at *8 (emphasis added). Even if a finding of disability is made based in whole or in part on a claimant's obesity, the Commissioner will find that a claimant has failed to follow prescribed treatment for obesity, and therefore is not eligible to receive benefits, only if *all* of the following criteria are met: (1) "a treating source has prescribed treatment for obesity," (2) the "treatment is clearly expected to restore the ability to engage in [substantial gainful activity]," (3) "the individual is not following the prescribed treatment," and (4) the individual does not have "a good reason for" not following the prescribed treatment. SSR 02-01p, 2000 WL 628049, at *9-*10; see 20 C.F.R. 404.1530, 416.930 (regulations regarding the need to follow prescribed treatment).

The ALJ did not find plaintiff disabled. Therefore, it was reversible error for the ALJ to take into account plaintiff's failure to follow medical advice to lose weight in denying benefits. See Orn, 495 F.3d at 636 (holding that the ALJ committed reversible error in finding that the plaintiff's failure to lose weight detracted from his credibility and supported a finding of nondisability because SSR 02-01p "preclude[d] the ALJ from considering the effect of any failure to follow treatment for obesity" unless the claimant was found disabled).

**Remedy**

In general, the choice whether to reverse and remand for further administrative proceedings, or to reverse and simply award benefits, is within the discretion of the court. See Harman v. Apfel, 211 F.3d 1172, 1178 (9th Cir.) (holding that the district court's decision whether to remand for further proceedings or for payment of benefits is discretionary and is subject to review for abuse of discretion), cert. denied, 531 U.S. 1038 (2000). The Ninth Circuit has observed that "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." Moisa v. Barnhart, 367 F.3d 882, 886 (9th Cir. 2004) (quoting INS v. Ventura, 537 U.S. 12, 16 (2002) (per curiam)). The Ninth Circuit has observed that "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." Moisa v. Barnhart, 367 F.3d 882, 886 (9th Cir. 2004) (quoting INS v. Ventura, 537 U.S. 12, 16 (2002) (per curiam)). A district court, however,

> should credit evidence that was rejected during the administrative process and remand for

an immediate award of benefits if (1) the ALJ failed to provide legally sufficient reasons for rejecting the evidence; (2) there are no outstanding issues that must be resolved before a determination of disability can be made; and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

Benecke v. Barnhart, 379 F.3d 587, 593 (9th Cir. 2004) (citing Harman, 211 F.3d at 1178).

A remand for further administrative proceedings is the proper remedy in this case because the ALJ erred in finding no severe impairment and prematurely terminated the sequential evaluation procedure at step two.[2]

**Conclusion**

For the reasons stated above, the Commissioner's decision is **reversed**, and the matter is **remanded** to defendant for further administrative proceedings consistent with the memorandum of decision.

**IT IS SO ORDERED.**

January 23, 2014

_____
ANDREW J. WISTRICH
United States Magistrate Judge

---

[2] After concluding that plaintiff was not disabled because his impairments were not severe, the ALJ added that "even if [plaintiff's] physical and mental impairments were considered to be severe, and with limitations to light work and simple repetitive tasks with occasional public contact, the vocational expert identified thousands fo jobs the claimant could perform." [AR 19]. If that statement is intended as an alternative finding of nondisability at step five, it is defective as a matter of law. The ALJ failed to assess plaintiff's residual functional capacity ("RFC") in his decision, did not make a formal RFC finding, and failed to make a properly supported finding at step five. Therefore, a remand for further administrative proceedings is required.